JAMES J. JIMMERSON, ESQ.
Nevada Bar No. 000264
JAMES M. JIMMERSON, ESQ.
Nevada Bar No. 12599
**THE JIMMERSON LAW FIRM, P.C.**
415 South 6th Street, Suite 100
Las Vegas, Nevada 89101
Telephone:    (702) 388-7171
Facsimile:    (702) 380-6413
Email: jimmerson@jimmersonlawfirm.com
         jmj@jimmersonlawfirm.com

BRETT A. AXELROD, ESQ.
Nevada Bar No. 5859
JEANETTE E. MCPHERSON, ESQ.
Nevada Bar No. 5423
NICHOLAS A. KOFFROTH, ESQ.
Nevada Bar No. 16264
ZACHARY T. WILLIAMS, ESQ.
Nevada Bar No. 16023
**FOX ROTHSCHILD LLP**
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
Telephone: (702) 262-6899
Facsimile: (702) 597-5503
Email: baxelrod@foxrothschild.com
        jmcpherson@foxrothschild.com
        nkoffroth@foxrothschild.com
        zwilliams@foxrothschild.com

*Counsel for Debtor Cash Cloud Inc.*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re<br><br>CASH CLOUD, INC.,<br>dba COIN CLOUD,<br><br>Debtor. | Bankruptcy Case No. Case No. 23-10423<br>Chapter 11<br><br>Adv. Case No.<br><br>**COMPLAINT**<br><br>Hearing Date:<br>Hearing Time: |

1

CASH CLOUD, INC.,
dba COIN CLOUD,

Plaintiff,

v.

ROCKITCOIN, LLC,

Defendant.

Cash Cloud, Inc. d/b/a Coin Cloud ("**Cash Cloud**" "**Plaintiff**" or "**Debtor**"), as debtor and debtor-in-possession in the above-captioned Chapter 11 case (the "**Chapter 11 Case**"), by and through its undersigned counsel of record, The Jimmerson Law Firm, P.C., and Fox Rothschild LLP, hereby files this Complaint and alleges as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

2. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O).

3. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The procedural grounds for the relief requested herein is Fed. R. Bankr. P. 7001.

5. Pursuant to Fed. R. Bankr. 7008 and Local Rule 7008, Cash Cloud consents to the entry of final orders or judgment by the bankruptcy judge if it is determined that the bankruptcy judge, absent consent of the parties, cannot enter final orders or judgment consistent with Article III of the United States Constitution.

6. The matter in controversy exceeds the sum or value of $75,000 and is between citizens of different States and therefore, original jurisdiction is conferred pursuant to 28 U.S.C. § 1332.

2

7.  Cash Cloud reserves its rights to amend this Complaint as additional facts may be discovered.

## PARTIES

8.  Cash Cloud is the debtor and debtor-in-possession in the above-captioned Chapter 11 Case. Cash Cloud is a Nevada corporation, duly formed under the laws of the State of Nevada. At all times since its formation in 2014, Cash Cloud's principal place of business has been in Clark County, Nevada. Cash Cloud operates under the trade name Coin Cloud. This trade name is registered with Clark County, Nevada. The federally registered trademark "Coin Cloud" is owned by Cash Cloud.

9.  Since its inception in 2014, Cash Cloud has grown to become a recognized leader in the retail digital currency (commonly known as cryptocurrency) trading industry. Using specialized kiosks akin to ATMs, Cash Cloud provides its customers with the ability to buy and sell digital currency conveniently and efficiently.

10. Defendant RockItCoin, LLC ("**Defendant**" or "**RockItCoin**") is a foreign limited-liability company organized under the laws of the State of Delaware. Upon information and belief, at all times relevant herein, Defendant's principal place of business is and has been 325 West Huron Street, Suite 310, Chicago, Illinois, 60654. Upon information and belief, none of the members of RockItCoin are residents of Nevada.

11. There is complete diversity between Plaintiff and Defendant.

## GENERAL ALLEGATIONS

**Debtor's Bankruptcy Filing**

12. On February 7, 2023, Cash Cloud filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code, thereby commencing the above-captioned Chapter 11 Case.

3

13. Cash Cloud is authorized to operate its business and manage its property as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

14. No request has been made for the appointment of a trustee or examiner, and no statutory committee has been appointed. (*See Docket*).

**Cash Cloud's Business**

15. Cash Cloud's business is centered on providing the public the means to buy and sell digital currency (*e.g.*, Bitcoin and other cryptocurrencies) using ATM-style digital currency machines ("**DCMs**").

16. Cash Cloud's customers purchase digital currency by depositing cash (U.S. dollars) in Cash Cloud's DCMs in exchange for digital currency in the customer's digital currency wallet. In turn, Cash Cloud's customers sell digital currency by sending digital currency to Cash Cloud and receiving the corresponding amount of cash from the DCMs.

17. As of December 31, 2022, Cash Cloud operated approximately 4,800 DCMs, or kiosks ("**Kiosks**") throughout the United States and Brazil, installed in some of the largest convenience, grocery and liquor store chains and prestigious malls.

18. To facilitate the installation of the Kiosks, Cash Cloud entered into numerous contracts ("**Contracts**") or leases ("**Leases**") with various parties ("**Counterparty**" or "**Counterparties**") having retail locations (more commonly referred to as "**hosts**"), including convenience stores, malls, and enterprise grocery stores. The terms in the Contracts and/or Leases vary. However, in general, the terms provide that Cash Cloud is permitted to install a Kiosk at a certain location ("**Location**") in exchange for compensation being paid to the Counterparty. There are thousands of Contracts or Leases, and the nature and amount of compensation varies and is sometimes in the form of a fixed monthly rental payment or a variable portion of the profit

4

of the Kiosk. The Contracts and/or Leases typically have a 3 to a 7-year term, with automatic renewals, unless terminated by either party.

**The Parties are Direct Competitors**

19. Defendant is a direct competitor of Cash Cloud and operates under a similar business model to Cash Cloud in that it has similar DCMs or Kiosks that it seeks to install at retail locations for use by consumers in many of the same geographic markets as Cash Cloud.

20. Cash Cloud's Contracts with its hosts contain exclusivity clauses such that the counterparty may not host a competing company's kiosks at the same location where a Cash Cloud kiosk is installed.

**The Sale of Debtor's Assets**

21. In efforts to maximize the value of Cash Cloud's estate for the benefit of its creditors and other parties in interest in the Chapter 11 Case, on April 7, 2023, Cash Cloud sought the Court's permission to approve bidding procedures for the sale of substantially all its assets pursuant to Section 363 of the Bankruptcy Code ("**Bid Procedures Motion**"). [ECF No. 392].[1]

22. The same was granted by this Court on April 27, 2023. [ECF No. 483].[2]

23. In furtherance of the auction of Debtor's assets, Defendant creditor RockItCoin sought to solidify its position as the stalking horse bidder.

24. The *Notice of Designated Stalking Horse Bidder* was filed on April 25, 2023. [ECF No. 473].[3]

---

[1]   Reference to Bankruptcy Case No. 23-10423.
[2]   *Id.*
[3]   *Id.*

25. Thereafter, Defendant submitted its stalking horse bid. Notice of the *Revised Stalking Horse Asset Purchase Agreement* was filed on May 26, 2023. [ECF No. 602].[4]

**The Non-Disclosure Agreement**

26. In furtherance of the sale of its assets and because of the proprietary nature of Cash Cloud's business, to ensure confidentiality, Cash Cloud required the execution of a Non-Disclosure Agreement ("**NDA**").

27. On February 22, 2023, Cash Cloud and Defendant executed the NDA which allowed Defendant to gain access to Cash Cloud's confidential business information relevant to the proposed sale with the understanding that the information gained was not to be disclosed or publicly shared to any other party and certainly not be used as a means to poach some of Cash Cloud's most important accounts and to the detriment of Cash Cloud.

28. Pursuant to the NDA, Defendant was only permitted to use the information learned for the strict purposes of evaluating the assets and participating in discussions regarding the proposed sale. Specifically, Section 2 of the NDA provides as follows:

> 2. <u>Use and Disclosure of Evaluation Material</u>.
>
> (a) Receiving Party agrees that it and its Representatives shall:
>
> (i) use the Evaluation Material **solely for the purpose of evaluating and negotiating the Transaction;** and
>
> (ii) except as provided in Section 3 hereof, **keep the Evaluation Material confidential and not disclose any Evaluation Material, directly or indirectly, to any other person**.
>
> […]
>
> (c) **Receiving Party shall be directly responsible and liable to the Company for any use or disclosure** by any of

---

[4] *Id*. A *Second Notice of Revised Stalking Horse Asset Purchase Agreement* and *Amended Notice of Designated Stalking Horse Bidder* was filed on May 26, 2023. [ECF Nos. 604 and 605, respectively].

6

> Receiving Party's Representatives **of any Evaluation Material or Engagement Information which, if done by Receiving Party itself, would be a breach of this Agreement,** it being understood that such responsibility and liability shall be in addition to and not by way of limitation of any right or remedy the Company may have against Receiving Party's Representatives with respect to such breach.

A copy of the NDA is attached hereto as **Exhibit 1**. (Emphasis added).

### The Auction

29. The auction was held on Friday, June 2, 2023, at 9:00 a.m. at the law offices of Fox Rothschild, LLP. Notice of the auction was given to all creditors and parties in interest.

30. Several creditors were in attendance, including Defendant RockItCoin.

31. All parties were given a full and fair opportunity to present their offers. Ultimately, Defendant did not prevail on its stalking horse bid.[5]

### Defendant's Breach of the Non-Disclosure Agreement

32. Despite the execution of the NDA and its unequivocal contractual obligations not to use or disclose any evaluation material to any other party, Defendant has instead used and, upon information and belief, is continuing to use this information gained through the bankruptcy sale proceedings against Cash Cloud in efforts to poach Cash Cloud's hosts.

33. As early as June 8, 2023, six (6) days following the auction of which Defendant failed to be successful, Cash Cloud received notice of Defendant's ill-fated efforts to solicit one of Cash Cloud's hosts. Below is a message sent from RockItCoin's President and Chief Operations Officer, Ben Phillips, to one of Cash Coin's leading hosts where he writes: "We've been ***intimately involved in the coincloud bankruptcy proceedings and subsequent asset auction as the stalking horse bidder.***" … "Full disclosure, this has been our first rodeo when it comes to

---

[5] *See Notice of Auction Results Regarding Sale of Substantially All of the Debtor's Assets* filed June 5, 2023. [ECF No. 618].

7

carving up a bankruptcy, so what do I really know… ***But we just spent 3 days in Vegas at their attorney's offices and nothing that we heard seemed good."*** … ***"Would you be open to discussing a move to RockItCoin?"*** Below is a screenshot of the message.

> Long time.
>
> We've been intimately involved in the coincloud bankruptcy proceedings and subsequent asset auction as the stalking horse bidder.
>
> I wanted to reach out since we had previously gotten pretty close to a deal with you, but ultimately lost out to coincloud.
>
> Frankly, the whole legal process has been very amateurish and, as it stands today, any sort of beneficial resolution for existing coincloud hosts seems highly unlikely.
>
> Full disclosure, this has been our first rodeo when it comes to carving up a bankruptcy, so what do I really know…. But we just spent 3 days in Vegas at their attorney's offices and nothing that we heard seemed good.
>
> Would you be open to discussing a move to RockItCoin?

34. This statement by Defendant's President and Chief Operations Officer is confirmation of Defendant's reprehensible actions to improperly and unjustifiably use the information learned through the bankruptcy proceeding to interfere with Cash Cloud's contractual relationships with its hosts.

35. Upon information and belief, after failing to successfully acquire Cash Cloud's assets at auction, Defendant used its position as the stalking horse bidder and took the proprietary information made available to it to launch a campaign to target Cash Cloud's most lucrative locations to replace Cash Cloud's Kiosks with Defendant's kiosks. *See* ¶ 31 above.

36. Upon information and belief, Defendant continues to engage in these improper practices of using this information learned through the bankruptcy proceeding and sale process (information undoubtedly subject to the NDA), including the identity of Cash Cloud's most significant and lucrative locations, in attempts to further its campaign to solicit these hosts to replace Cash Cloud Kiosks with Defendant's kiosks.

37. As a direct and proximate result of Defendant's wrongdoing and breach of the NDA, Cash Cloud has suffered substantial damages, for which it now seeks relief from this Court.

38. Additionally, equitable relief in the form of an injunction is warranted and necessary to prevent Cash Cloud from suffering even further harm as a result of Defendant's continuing misconduct.

### FIRST CLAIM FOR RELIEF
### (Breach of Contract)

39. Cash Cloud repeats and realleges every allegation contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

40. As detailed above, Cash Cloud and Defendant entered into the NDA whereby in exchange for Defendant's access to certain proprietary confidential information in furtherance of the auction and sale of Cash Cloud's assets and Defendant's position as stalking horse bidder in the Chapter 11 Case, Defendant unequivocally agreed any information received by Cash Cloud was for the sole purpose of evaluating and negotiating the transaction and Defendant agreed not to disclose any of the information, directly or indirectly, to any other person. *See* 2(a), Exhibit 1.

41. Any use or disclosure by Defendant of any of the evaluation information would be a breach of the NDA. *See* 2(c), Exhibit 1.

42. The NDA is a valid and enforceable contract.

43. As detailed above, Defendant, acting through its President Ben Phillips, breached the NDA by using the information learned at the auction and through the bidding process to inappropriately attempt to poach Cash Cloud's most important hosts.

44. Cash Cloud has performed all of its obligations required of it under the NDA.

45. As a direct, natural, and proximate result of Defendant's breach of contract, Cash Cloud has damages in a sum in excess of Seventy-Five Thousand Dollars ($75,000.00).

9

## SECOND CLAIM FOR RELIEF
### (Breach of Implied Covenant of Good Faith and Fair Dealing)

46. Cash Cloud repeats and realleges every allegation contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

47. Defendant owed, and continues to owe, Cash Cloud a duty of good faith and fair dealing to do everything under the NDA that Defendant is required to do to further the purposes of the NDA and to honor the terms and conditions thereof to the best of its ability.

48. In doing the acts alleged herein, Defendant, acting through its President Ben Phillips, failed to act in good faith and to the best of its ability, and also failed to deal fairly with Cash Cloud, thereby breaching its duties to so conduct itself and injuring Cash Cloud's rights to conduct its business and its ability to receive the benefits of the NDA.

49. As a direct, natural, and proximate result of Defendant's breach of the implied covenant of good faith and fair dealing, Cash Cloud has damages in a sum in excess of Seventy-Five Thousand Dollars ($75,000.00).

WHEREFORE, Cash Cloud prays for judgment against Defendant as follows:

a) For actual damages in an amount to be determined by a trier of fact, as well as consequential, punitive, and/or treble damages;

b) For equitable/injunctive relief as appropriate;

c) For reasonable attorney's fees and costs; and

///

d)       For any other relief this Court finds just and proper.

DATED this 20th day of June, 2023.

                    THE JIMMERSON LAW FIRM, P.C.

*/s/ James M. Jimmerson, Esq.*
JAMES J. JIMMERSON, ESQ.
Nevada Bar No. 000264
JAMES M. JIMMERSON, ESQ.
Nevada Bar. No. 12599
415 S. Sixth Street, Suite 100
Las Vegas, Nevada 89101

FOX ROTHSCHILD LLP
BRETT A. AXELROD, ESQ.
Nevada Bar No. 5859
JEANETTE E. MCPHERSON, ESQ.
Nevada Bar No. 5423
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135

*Attorneys for Plaintiff/Debtor Cash Cloud Inc.*